DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

JANET EVERMAN, individually and as personal
representative of the Estate of Joseph Everman, deceased,

Appellant,

v.

KENNEDY, WHITE & RIGGS ORTHOPEDIC ASSOCIATES,
LLP; LAM NGUYEN, M.D., P.A.; NGOC-LAM NGUYEN, M.D.;
and SARASOTA COUNTY PUBLIC HOSPITAL DISTRICT,
d/b/a Sarasota Memorial Hospital,

Appellees.

No. 2D2024-2678
_____

July 8, 2026

Appeal from the Circuit Court for Sarasota County; Stephen M. Walker, Judge.

Samuel Alexander and Michael J. Ellis of Alexander Appellate Law, P.A., Jacksonville, for Appellant.

Dinah S. Stein and Dean Kandi of Hicks, Porter & Stein, P.A., Miami; and Ralph L. Marchbank, Jr., and Mark S. Tomlinson of Dickinson & Gibbons, P.A., Sarasota, for Appellees Kennedy, White & Riggs Orthopedic Associates, LLP, Lam Nguyen, M.D., P.A., and Ngoc-Lam Nguyen, M.D.

No appearance for remaining Appellee.

SILBERMAN, Judge.

Janet Everman, individually and as personal representative of the Estate of Joseph Everman, appeals a final judgment entered in favor of Ngoc-Lam Nguyen, M.D.; Lam Nguyen, M.D., P.A.; and Kennedy, White & Riggs Orthopedic Associates (Kennedy White), as well as an earlier dismissal of counts V and VI of her third amended complaint against Kennedy White. We affirm the final judgment entered in favor of Ngoc-Lam Nguyen, M.D., and Lam Nguyen, M.D., P.A., without discussion.[1] However, we agree with Ms. Everman that the trial court erred in dismissing counts V and VI based on its finding that she did not comply with the presuit requirements of Florida's Medical Malpractice Act contained in section 766.104, Florida Statutes (2021). Because both claims arise from ordinary negligence, the presuit requirements of section 766.104 do not apply. We therefore reverse the dismissal of those two counts.

## I. BACKGROUND

Ms. Everman's husband, Joseph Everman, underwent back surgery at Sarasota Memorial Hospital, and by all accounts, surgery went well. Mr. Everman's surgery was performed by Dr. Ashvin Patel, an employee of Kennedy White. Two days after his surgery, Mr. Everman was transferred to the Inpatient Rehabilitation Center at Sarasota Memorial Hospital. Later that afternoon, Mr. Everman's abdominal incision became extremely painful and began draining and dehiscing (separation of the skin). The nursing staff contacted Kennedy White for guidance on treating the incision and to alert Dr. Patel to the declining condition of Mr. Everman. Dr. Patel and Dr. Ngoc-Lam Nguyen, also an

---

[1] Sarasota Memorial Hospital, a party in the trial court, is not involved in this appeal. *See* Fla. R. App. P. 9.020(g)(2).

2

employee of Kennedy White, were the on-call doctors most responsible for monitoring Mr. Everman postoperation.

When Mr. Everman's nurse telephoned the office of Kennedy White, the after-hours phone greeting informed her that if she had an urgent message for the on-call physician and needed to speak with the physician to remain on the line and speak with the answering service. Kennedy White's answering service, Callstar, Inc., answers phone calls for a variety of businesses such as medical offices, legal offices, tradesmen, and real estate offices. Its operators have no specialized medical licenses, medical training, or specialized knowledge pertaining to medicine, but rather must have a high school diploma or GED.

Kennedy White controlled what Callstar's operators told callers and how messages were delivered. Kennedy White accepted the standard account setup that Callstar provides to clients rather than choosing to alter and customize the account. The design of the standard account setup was done by a nonmedical individual at Callstar.

When Mr. Everman's nurse contacted the office of Kennedy White, Callstar's operator answered the call and went through the script that was authored by the nonmedical staff of Callstar. The nurse left a detailed message advising that Mr. Everman's incision was dehiscing, draining, and distended, but the Callstar operator typed out "COND" in the message to Dr. Nguyen. The text of the message simply stated: "*68* HOSP ORTHO PATEL FACILITY SMH 4 IN PT REHAB CAMI 9419177810 PT JOSEPH EVERMAN COND." Dr. Nguyen received the message but took no action based on the information contained in the message. Mr. Everman's nurse was not told that the message to the doctor would simply say "COND."

In the early morning hours of the following day, Mr. Everman's condition worsened, and it was determined that he was in septic shock. Unfortunately, Mr. Everman passed away two days later.

## II.  COUNTS V & VI

In count V of Ms. Everman's third amended complaint, she alleged a negligence claim against Kennedy White.  She claimed that Kennedy White's nonmedical staff owed Mr. Everman "a duty of ordinary care that complied with industry business standards in the management of a medical practice."  Further, "[t]his function of the business lies outside of the provision of medical care and falls within the management and administration of the business, which is conducted by non-medical employees."  She alleged that Kennedy White's telephone system was implemented and managed by nonclinical employees who possess no medical licenses, medical training, or specialized knowledge pertaining to medicine.  Additionally, Kennedy White's medical providers had no role in the decision-making pertaining to the answering service or the after-hours message as it was the responsibility of nonmedical staff.

Ms. Everman asserted that Kennedy White breached its duty of ordinary care by failing to educate and train its doctors and midlevel providers about the contents of the after-hours phone message; failing to train its doctors that callers who leave a message with the answering service believe they have an urgent medical issue and need to speak with the on-call doctor immediately; failing to require Callstar's operators to ask nurses if they would like a callback; and failing to ensure Callstar's staff knew that all calls to them are urgent in nature based on their practice's after-hours phone greeting.  She contended that Kennedy White's nonmedical staff was negligent in creating its on-call and surgery schedule for its doctors.

4

In count VI, Ms. Everman alleged a vicarious liability claim against Kennedy White. She asserted that the nonmedical business managers and employees of Kennedy White selected Callstar as its agent to answer after-hours phone calls. Callstar's acts or omissions were done in the course and scope of its agency with Kennedy White, and Kennedy White is vicariously liable for the negligence of Callstar. Further, the actions of Callstar were controlled by or subject to the control of Kennedy White.

She claimed that Callstar owed Mr. Everman a duty of ordinary care as it related to the performance of its answering service duties. Callstar breached its duty of ordinary care by (1) failing to notate and transmit to the on-call doctor the message left by Mr. Everman's nurse; (2) "[p]araphrasing only messages left by nurses to single words or abbreviations of words and failing to tell the nurse their message is not being passed on as stated by the caller"; (3) "[f]ailing to notate all calls to the answering service as urgent"; and (4) failing to ask nurses if they would like a call back.

Kennedy White moved to dismiss counts V and VI of the complaint based on its argument that both claims arise out of the rendering of or the failure to render medical services, care, or treatment, and therefore, the failure of Ms. Everman to comply with the requirements of section 766.104 required dismissal. The trial court found Kennedy White's arguments persuasive and dismissed counts V and VI with prejudice.

### III. DISCUSSION

Before an action may be filed for personal injury or wrongful death that arises out of medical negligence, the plaintiff must conduct "a reasonable investigation as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant." § 766.104(1). "The

presuit requirements of Florida's Medical Malpractice Act restrict plaintiffs' constitutional right of access to courts, so the requirements' applicability must be construed narrowly in favor of access." *Pierrot v. Osceola Mental Health, Inc.*, 106 So. 3d 491, 493 (Fla. 5th DCA 2013).

A claim for medical negligence is a claim that arises out of the providing of or the failure to provide medical services or care. § 766.106(1)(a).

> [F]or a claim to sound in medical malpractice, the act from which the claim arises must be directly related to medical care or services, which require the use of professional judgment or skill. This inquiry involves determining whether proving the claim requires the plaintiff to establish that the allegedly negligent act "represented a breach of the prevailing professional standard of care," as testified to by a qualified medical expert.

*Nat'l Deaf Acad., LLC v. Townes*, 242 So. 3d 303, 311-12 (Fla. 2018) (quoting § 766.102(1), Fla. Stat. (2008)). Accordingly, a negligence claim against a healthcare provider is subject to presuit notice requirements only "if '[t]he wrongful act [is] directly related to the improper application of medical services[ ] and the use of professional judgment or skill.' " *Payas v. Adventist Health Sys./Sunbelt, Inc.*, 238 So. 3d 887, 893 (Fla. 2d DCA 2018) (alterations in original) (quoting *Corbo v. Garcia*, 949 So. 2d 366, 368 (Fla. 2d DCA 2007)). A plaintiff may file an ordinary negligence claim against a provider of medical services or care if they "can successfully allege factual matters constituting ordinary negligence." *Feifer v. Galen of Fla., Inc.*, 685 So. 2d 882, 885 (Fla. 2d DCA 1996).

The actions of a health care provider's administrative employees can support a claim of ordinary negligence. In *Acosta v. HealthSpring of Florida, Inc.*, 118 So. 3d 246, 247 (Fla. 3d DCA 2013), the issue on appeal was whether the Acostas were required to give presuit notice to HealthSpring, which provided Mr. Acosta with Medicare health insurance

6

benefits. In the Acostas' second amended complaint, they "alleged that HealthSpring's administrative personnel—not medical staff—failed to provide contractual authorization for Mr. Acosta to be transported promptly to the University of Miami hospital for an urgent carotid endarterectomy to prevent a second major stroke." *Id.* at 248. A physician and a different hospital diagnosed Mr. Acosta and provided initial care, "but HealthSpring's administrative delay in authorizing Mr. Acosta's transfer allegedly resulted in his second stroke." *Id.* The complaint alleged that administrative employees of "HealthSpring belatedly authorized transfer to Mercy Hospital instead of the University of Miami Hospital because HealthSpring enjoyed a lower 'preferred provider' rate at Mercy Hospital for the services in question." *Id.*

The Third District found that refusals to authorize medical care and administrative delays can form the basis of an ordinary negligence claim rather than a claim for medical malpractice. *Id.* at 248-49 (first citing *Solomon v. Well Care HMO, Inc.*, 822 So. 2d 543 (Fla. 4th DCA 2002); and then citing *Lane v. Health Options, Inc.*, 796 So. 2d 1234 (Fla. 4th DCA 2001)). In holding that the Acostas were not required to give presuit notice to HealthSpring, the court stated that "[t]he fact that the organization is a 'health care provider' does not talismanically transform every decision (or non-decision) made by a clerk or administrative staffer into a medical judgment." *Id.* at 249.

Similarly, the Fifth District has held that

[i]t is axiomatic that the mere fact that a wrongful act occurs in a medical setting does not automatically transform the contested action into one that sounds in medical malpractice; the wrongful act must be "directly related to the improper application of medical services and the use of professional judgment or skill."

7

*Holmes Reg'l Med. Ctr., Inc. v. Dumigan*, 151 So. 3d 1282, 1286 (Fla. 5th DCA 2014) (quoting *Corbo*, 949 So. 2d at 368); *see also Milbert v. Answering Bureau, Inc.*, 120 So. 3d 678, 681, 690 (La. 2013) (noting that medical answering service was "a non-health care provider" where it failed to contact doctor as directed and failed to convey the patient's messages to the doctor).

We review the trial court's order finding that counts V and VI allege claims for medical malpractice de novo. *Nat'l Deaf Acad.*, 242 So. 3d at 308. Although Kennedy White is a provider of health care services, the allegations in the complaint are that Kennedy White's answering service was implemented, managed, and operated by nonmedical staff. As a result of the manner in which it was implemented, managed, and operated, Kennedy White's answering service failed to accurately inform the on-call doctor of messages left by callers, it did not inform callers that their entire message would not be communicated to physicians, and it failed to ask callers if they needed a callback.

These allegations in the complaint do not directly relate to medical care or services that require the use of professional judgment or skill. *See id.* at 311. No medical analysis was required by employees of the answering service. Further, proving these allegations will not require testimony from a medical expert on the professional standard of care. *Id.* at 311-12. Thus, the allegations in counts V and VI form the basis of ordinary negligence claims, and Ms. Everman was not required to comply with the presuit requirements of Florida's Medical Malpractice Act. Accordingly, we reverse the order dismissing counts V and VI and remand for further proceedings.

Affirmed in part, reversed in part, and remanded.

8

KELLY and ROTHSTEIN-YOUAKIM, JJ., Concur.

_____

Opinion subject to revision prior to official publication.